## HARVEY RANDALL v. THE STATE.

1. If, at the time fixed for opening a Court of Oyer and Terminer, no justice of the Supreme Court is in attendance, and the Court of Common Pleas thereupon orders an adjournment of the Oyer to a future day, the Court of General Quarter Sessions may, nevertheless, organize the grand jury in accordance with section 28 of the Criminal Procedure act.

2. A grand jury, organized under section 28 of the Criminal Procedure act, proceeds as a part of the Court of General Quarter Sessions, and indictments presented by it for offences within the jurisdiction of the Sessions, may be tried in that court without the intervention of the Oyer.

3. In an indictment for larceny, a "United States gold certificate," issued under the act of congress, approved July 12th, 1882, ch. 290, § 12, is sufficiently described as a "United States treasury note."

4. Under sections 135 and 136 of the Crimes act, an indictment is sufficient if it characterizes the offence as an unlawful and malicious taking and stealing from the person, without charging a felonious stealing and carrying away.

On indictment for larceny. On error to the Sussex Quarter Sessions.

Argued at February Term, 1891, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and GARRISON.

For the plaintiff in error, *Francis J. Swayze.*

For the state, *Theodore Simonson.*

The opinion of the court was delivered by

DIXON, J.    The plaintiff in error was indicted, tried and convicted, in the General Quarter Sessions of Sussex county, for larceny, and now presents several reasons for reversal of the judgment.

The first is, that the grand jury, by which the indictment was found, was legally a part of the Court of Oyer and Terminer, and, therefore, was incompetent to find an indictment in the Quarter Sessions.

The facts disclosed by the return to the writ of error are, that the grand jury was returned by the sheriff into the Oyer and Terminer, at the opening of the term, September 10th, 1889, according to section 36 of the Criminal Procedure act (*Rev.*, *p.* 273); that then, no justice of the Supreme Court being present, the Court of Common Pleas ordered an adjournment of the Oyer and Terminer to September 16th, 1889, according to section 34 of the act relative to courts (*Rev.*, *p.* 218), and that the Court of General Quarter Sessions at once organized the grand jury, according to section 28 of the Criminal Procedure act (*Rev.*, *p.* 272).

Contrary to the views urged on behalf of the plaintiff in error, we think that the adjournment of the Oyer by order of the Common Pleas, did not continue the return of the grand jury to the adjourned day, so as to prevent the immediate organization of that body by the Sessions, and that in so organizing the grand jury the Sessions acted, not as an agent of the Oyer, but in the exercise of a statutory authority conferred upon it as an independent tribunal.    If the Sessions chose to organize the grand jury, the effect of the statute was to transfer the sheriff's return from the Oyer to the Sessions, and thereafter the jury proceeded as a part of the latter court.

The next reason assigned for reversal is that the caption does not state the special facts which authorized the Sessions to organize the grand jury.

The caption alleges everything which, in *State* v. *Jones,* 4 *Halst.* 357, Chief Justice Ewing declared to be usual in such instruments, and it also indicates that no justice of the Supreme Court was present at the organization of the grand jury.

. If it should be more explicit in averring the absence of such a justice " at the usual hour of opening the court of Oyer and Terminer on the day appointed by law for holding such court," in the words of the statute, the defect is amendable (*State* v. *Society*, 13 *Vroom* 504), and as it could not have prejudiced the plaintiff in maintaining his defence upon the merits, the judgment cannot be reversed therefor. *Rev., p.* 284; *Crim. Pro.,* § 89.

On the same ground we would be precluded from sustaining his objection, now first made, that there were no rules entered transmitting the indictment from the Sessions to the Oyer, and remitting it from the Oyer to the Sessions, even if such a course be requisite in case of indictments found in the Sessions, under section 28 of the Criminal Procedure act. That section was enacted February 11th, 1836, subsequent to section 24, requiring the Sessions to send indictments to the Oyer, which has been in existence since November 22d, 1794; and the direction of the later statute, that indictments found under its provisions shall be tried and determined in either the Sessions or the Oyer, as by law the same ought to be tried, seems to give the Sessions authority to try such offences as its jurisdiction covers, without the intervention of the Oyer.

Another alleged ground for reversal is, that the indictment charges the stealing of a " United States treasury note," while the proof related to a " gold certificate," issued under the act of congress, approved July 12th, 1882, ch. 290, § 12. It is insisted that this is a fatal variance.

Both by the statute and according to its own tenor, this certificate was issued by the officers of the United States treasury and binds the government to the payment of $50 in gold coin, on demand at the treasury. It is not sealed. We, therefore, think that it is properly called a " United States

treasury note." Its designation as a "gold certificate" would merely have pointed out with more particularity what sort of a treasury note it was, but such detail is not requisite. *Commonwealth* v. *Butts*, 124 *Mass.* 449.

Another objection is that the indictment is inconsistent, because it charges an assault upon J. H. C. with force, and a stealing from his person without force. If this be an incongruity, it is utterly unimportant.

The plaintiff's counsel also contends that the indictment should charge a felonious stealing and carrying away. This would be true if it had been designed to charge a common law larceny; but as the purpose was only to charge a statutory misdemeanor, under sections 135 and 136 of the Crimes act, the indictment sufficiently characterizes the offence as an unlawful and malicious taking and stealing from the person, in the language of the statute.

None of the reasons for reversal is well grounded, and the judgment should be affirmed.